OPINION
{¶ 1} Defendant-Appellant, Thomas M. West, appeals the judgment of the Auglaize County Municipal Court, convicting him of, among other things, operating a vehicle while under the influence of alcohol (OVI) in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2), both misdemeanors of the first degree, sentencing him to serve one hundred eighty days in jail, ordering him to pay a fine of three hundred fifty dollars and zero cents and all costs of the proceeding, and suspending his operator's license. In addition, West was ordered to pay the mandatory penalty of a thirty dollar fine for failure to wear a seatbelt in violation of R.C. 4513.263, a minor misdemeanor. On appeal, West asserts that the trial court erred in failing to dismiss the charges against him for lack of jurisdiction and violations of his right to a speedy trial; that the trial court erred in finding the officer's testimony credible over other evidence in the record; that the trial court erred in failing to suppress a police station video; that the trial court erred in imposing a sentence upon him where there was no waiver of counsel executed by him; that the trial court erred in failing to declare a mistrial because of prosecutorial misconduct during the State's opening statement; that the trial court erred in imposing multiple sanctions against him; and, that the trial court erred in denying him his right to a twelve member jury. Finding that there was no waiver of counsel evident in the record, we vacate the portion of West's sentence imposing a one hundred eighty day jail term, and based on the following, we affirm the judgment of the trial court in all other respects.
 {¶ 2} On March 6, 2005, West was arrested for OVI in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2), both misdemeanors of the first degree. Additionally, West was cited for driving on a sidewalk in violation of R.C. 4511.711, a minor misdemeanor, and driving without a safety belt in violation of R.C. 4513.263(B)(1), a minor misdemeanor. On March 7, 2005, West posted bond.
 {¶ 3} On March 9, 2005, West's attorney, Eric Wilson, filed notice of counsel along with a time waiver. The time waiver provided "Defendant, by and through counsel, waives his right to a speedy trial as provided in O.R.C. Section 2945.71." (Mar. 9, 2005 Motion p. 2).
 {¶ 4} On May 9, 2005, Wilson moved to suppress evidence on behalf of West. On May 11, 2005, West filed his own motion to dismiss with an additional motion and demand, which the trial court summarily overruled because West had counsel representing him.
 {¶ 5} In June of 2005, the trial court held a hearing on Wilson's motion to suppress. In its entry overruling Wilson's motion, the trial court provided:
The evidence presented by the State was that the officerobserved the defendant leave a parking lot by driving across thesidewalk and the curb. At the intersection the officer observedthe vehicle to (Sic.) make a right turn and to (Sic.) go left ofcenter while on South Street. The officer activated the pursuitlights and the defendant pulled over just after the nextintersection. The officer testified that he observed a strongodor of alcohol coming from the defendant, that his eyes werebloodshot and glassy and that his speech was slurred and hismovements within the vehicle were slow and deliberate. Thedefendant admitted to having a couple of drinks and was asked toexit the vehicle. The officer had the defendant perform the HGNtest and stated that he observed all six clues. The defendantadvised that he had physical problems and could not do the walkand turn and one leg stand test. The defendant and his passengercontested virtually every point of the officer's testimony.Specifically they testified that they had not been at theFriendly Tavern but had been at the CC Loft and Lounge. Theyadvised that they had never been in the parking lot and thus hadnot driven over the sidewalk and curb. They testified that theirpath had been straight down South Street to the point where theywere pulled over. The defendant indicated that he had only twodrinks, purchased for him by the owner of the CC Loft and Lounge— shots drunk within two minutes of leaving the bar. Thedefendant also testified that he had undergone laser eye surgeryseveral weeks prior to the incident.
 {¶ 6} The video of the stop begins after the cruiser was onSouth Street. It thus shows none of the driving alleged by eitherside. Additionally the officer's mike was malfunctioning —cutting in and out so that much of the conversation of theparties was not audible.
 {¶ 7} The video does appear to show some of the pointstestified to by Officer Sutton — specifically that it took sometime for the defendant to present his license and other documentsto the officer. It does not clearly show the officer having totake the license from the defendant. The video also has some ofthe defendant's voice and that audio would appear to confirm theslurring speech as testified to by the officer.
 {¶ 8} The Court finds that the entire proceeding is one of thecredibility of the parties. The Court finds that it believes thatthe officer is credible and that the defendant and his witnessare not.
 {¶ 9} The Court finds that the State has therefore establishedthat Officer Sutton did have reasonable basis for the stop of thedefendant's vehicle and to place him under arrest for OVI.
(June 24, 2005 Judgment Entry pp. 1-2).
 {¶ 10} In August of 2005, Wilson moved to resign as counsel, because West no longer desired his services. The trial court granted Wilson's motion.
 {¶ 11} In October of 2005, West filed another motion to dismiss, which the trial court subsequently overruled.
 {¶ 12} On January 9, 2006, a jury trial was held.[1]
The jury trial lasted two days. West failed to appear on the second day of trial; however, the trial court found West's absence to be voluntary. At the conclusion of the trial, the jury returned guilty verdicts on all counts. Subsequently, the trial court sentenced West to one hundred eighty days in jail, ordered him to pay a fine of three hundred fifty dollars and all costs of the proceedings, and suspended his license for five years retroactive to the date of the arrest on the offense of OVI as a second offense within six years. In addition, West was ordered to pay the mandatory penalty of a thirty dollar fine for failure to wear a seatbelt in violation of R.C. 4513.263, a minor misdemeanor.
 {¶ 13} It is from this judgment West appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I Trial court erred in failing to dismiss for lack ofjurisdiction, contrary to the laws of this state.
 Assignment of Error No. II Trial Court erred in failing to dismiss, pursuant toappellant's right to a speedy trial.
 Assignment of Error No. III Trial Court erred in the first instant, failing to dismiss,finding officer's testimony credible over that of officer's actsin bad faith and/or appellant and appellant's witness testimonyas supported by the evidence.
 Assignment of Error No. IV Trial Court erred in failing to suppress police station video,where said evidence was immaterial to the alleged violation ofO.R.C. 4511.19(A)(1)(a), as said law has created a definitivetime period of being under the influence.
 Assignment of Error No. V Trial court erred in imposing a 180 days term of incarcerationand/or any term of confinement, where appellant did not and/orthe trial court does not have a waiver of counsel executed byappellant.
 Assignment of Error No. VI Trial court erred in failing to declare mis-trial pursuant toprosecutor's misconduct during opening statement.
 Assignment of Error No. VII Trial Court erred in imposing multitude of punishments and/orsanctions in violation of bill of attainders and double jeopardyclause and/or mandate of the Constitutions.
 Assignment of Error No. VIII Trial Court erred in denying appellant's right to a trial byjury, as mandated by Article 1, Section 5, which hold such shallbe "Inviolate."
 {¶ 14} Due to the nature of appellant's assignments of error, we will review them out of order.
 Assignment of Error No. I {¶ 15} In his first assignment of error, West argues that the trial court should have dismissed the charges against him for lack of jurisdiction. Specifically, West asserts that the Auglaize County Municipal Court lacked jurisdiction to hear his case, because R.C. 1901.021(E) requires that his court proceedings had to occur in City of St. Marys, where he was pulled over, instead of Wapakoneta. We disagree.
 {¶ 16} R.C. 1901.01(A) establishes a municipal court in Wapakoneta, Ohio, styled the "Auglaize county municipal court." See R.C. 1901.02(A)(9). R.C. 1901.02(A) provides that "municipal courts established by [R.C. 1901.01] have [territorial] jurisdiction within the corporate limits of their respective municipal corporations * * *." R.C. 1902.02(B) provides, in pertinent part, that "[i]n addition to the [territorial] jurisdiction set forth in division (A) of this section, the municipal courts established by section 1901.01 of the Revised Code have jurisdiction as follows: * * * The Auglaize county municipal court has [territorial] jurisdiction within Auglaize county."
 {¶ 17} R.C. 1901.021 provides where a judge of a municipal court is able to sit within his or her territorial jurisdiction to hold court. Specifically, R.C. 1901.021(E) provides, "[t]he judge of the Auglaize county municipal court shall sit within the municipal corporations of Wapakoneta and St. Marys and may sit in other incorporated areas in Auglaize county."
 {¶ 18} Section 18, Article IV of the Ohio Constitution, provides that a judge of a municipal court has "such power and jurisdiction, at chambers, or otherwise, as may be directed by law." R.C. 1901.20(A) provides that a municipal court has "jurisdiction * * * of the violation of any misdemeanor committed within the limits of its territory."
 {¶ 19} The record reveals that West was cited for violating R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2), misdemeanors of the first degree, as well as R.C. 4511.711, a minor misdemeanor, in the City of St. Marys, Auglaize County, Ohio. Also, when Officer Sutton stopped West, he was not wearing his safety belt, a violation of R.C. 4513.263, a minor misdemeanor. Since West's violations of R.C. 4511.19(A)(1)(a), 4511.19(A)(2), 4511.711, and4513.263 occurred within the geographic boundaries of Auglaize County, the Auglaize County Municipal Court had jurisdiction to proceed and, if appropriate, to enter judgment against West. As noted above, the Auglaize County Municipal Court was established under R.C. 1901.01, and R.C. 1901.02(B) provides for countywide jurisdiction of that court. Even though R.C. 1901.021(E) requires the judge of the Auglaize County Municipal Court to sit in St. Marys as well as Wapakoneta, R.C. 1901.021(E) does not affect the subject matter or territorial jurisdiction of the Auglaize County Municipal Court. Therefore, we find that the Auglaize County Municipal Court had both subject matter and territorial jurisdiction over this action.
 {¶ 20} Accordingly, West's first assignment of error is overruled.
 Assignment of Error No. II {¶ 21} In his second assignment of error, West argues that he was denied his right to a speedy trial. Specifically, West asserts that the waiver of speedy trial, which his hired counsel filed was invalid; that his filing on May 11, 2005 voided his hired counsel's waiver of speedy trial; and, that the State's failure to provide a bill of particulars and a motion for disclosure of intent to use evidence in a timely manner denied his right to a speedy trial. We disagree.
 {¶ 22} It is well established that the Ohio speedy trial statute is mandatory, constitutional, and must be construed strictly against the state. See, e.g., State v. Singer (1977),50 Ohio St.2d 103. "Once a criminal defendant shows that he was not brought to trial within the permissible period, the accused presents a prima facie case for release." State v. Caudill
(Dec. 2, 1998), 3d Dist. No. 05-97-35; see, also, State v.Howard (1992), 79 Ohio App.3d 705, 707. At that point, the burden shifts to the state to demonstrate that sufficient time was tolled or extended under the statute. State v. Butcher
(1986), 27 Ohio St.3d 28, 31. Furthermore, a defendant's right to a speedy trial may be waived provided that such waiver is either expressed in writing or made in open court on the record. Statev. King, 70 Ohio St.3d 158, 1994-Ohio-412, syllabus.
 {¶ 23} R.C. 2945.71 is Ohio's speedy trial statute, which provides, in pertinent part:
(A) Subject to division (D) of this section, a person againstwhom a charge is pending in a court not of record, or againstwhom a charge of minor misdemeanor is pending in a court ofrecord, shall be brought to trial within thirty days after theperson's arrest or the service of summons.
 (B) Subject to division (D) of this section, a person againstwhom a charge of misdemeanor, other than a minor misdemeanor, ispending in a court of record, shall be brought to trial asfollows:
* * *
(2) Within ninety days after the person's arrest or theservice of summons, if the offense charged is a misdemeanor ofthe first or second degree, or other misdemeanor for which themaximum penalty is imprisonment for more than sixty days. (D) Aperson against whom one or more charges of different degrees,whether felonies, misdemeanors, or combinations of felonies andmisdemeanors, all of which arose out of the same act ortransaction, are pending shall be brought to trial on all of thecharges within the time period required for the highest degree ofoffense charged, as determined under divisions (A), (B), and (C)of this section.
 (E) For purposes of computing time under divisions (A), (B),(C)(2), and (D) of this section, each day during which theaccused is held in jail in lieu of bail on the pending chargeshall be counted as three days.
 {¶ 24} Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C.2945.71, et seq. State v. DePue (1994), 96 Ohio App.3d 513,516; see also Cleveland v. Seventeenth Street Association (Apr. 20, 2000), 8th Dist. No. 76106; State v. Gabel (Oct. 31, 1996), 8th Dist. No. 69607. Where we find ambiguity, we construe the record in favor of the accused. Singer, 50 Ohio St.2d at 109;State v. Mays (1996), 108 Ohio App.3d 598, 609.
 {¶ 25} The law in Ohio is that the right to a speedy trial time starts to run the day after arrest. R.C. 2945.71. However, we toll "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E).
 {¶ 26} Since West was charged with multiple misdemeanors, the most severe being a misdemeanor of the first degree, under R.C.2945.71(B)(2) (D), West's trial should have occurred within ninety days of his arrest, unless there were applicable tolling events under R.C. 2945.72.
 {¶ 27} On March 6, 2005, West was arrested and charged with multiple misdemeanors. On March 7, 2005, West posted bond and was released from jail. On March 9, 2005, West's retained attorney filed a time waiver. On October 14, 2005, West moved to dismiss as to the failure to provide a speedy trial, because the State failed to provide him with a bill of particulars and a disclosure of its intent to use evidence, which the trial court noted "should serve as the withdrawal of the defendant's waiver through his counsel of his right to a speedy trial." (October 26, 2005 Journal Entry). Additionally, on October 14, 2005, West moved to continue the trial, which was scheduled for October 24, 2005, because he was unable to attend the trial. On October 19, 2005, the trial court denied West's October 14, 2005 motion to continue, because West failed to show a justifiable basis for the continuance. On October 20, 2005, West amended his motion to continue to include the justification that the State's late response to his request for a bill of particulars and a statement as to the State's intent to use evidence would require the continuation of the trial. The trial court granted West's amended motion and continued the trial until November 14, 2005. On November 4, 2005, West moved again to continue the trial, which the trial court granted. The jury trial was rescheduled for January 9, 2006.
 {¶ 28} Accordingly, in the time period between March 6 and March 9, 2005, West would be credited six days of speedy trial time for the time he was incarcerated, under R.C. 2945.71(E), and two days of speedy trial time for time between his bond posting and filing of the time waiver. West would also be credited seven days of speedy trial time for the time between his withdrawal of his time waiver and his amended motion for continuance of the trial. Therefore, only fifteen days of the statutory ninety days had elapsed. Accordingly, the trial court correctly ruled that appellant's right to a speedy trial was not abridged.
 {¶ 29} Nevertheless, West asserts that our count of speedy trial time days would be incorrect. First, West asserts that his retained counsel's filing of a waiver of a speedy trial was invalid, because the waiver was against his wishes and without his consent. However, in State v. McBreen, the Ohio Supreme Court held "A defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." McBreen (1978), 54 Ohio St.2d 315, syllabus. Additionally, we note that West's retained counsel's waiver of a speedy trial was expressed in writing and filed with the trial court. See King, 70 Ohio St.3d at 158, syllabus. Accordingly, West's retained counsel's waiver of a speedy trial was valid.
 {¶ 30} Secondly, West asserts that his filing on May 11, 2005 voided his retained counsel's waiver of speedy trial. In his filing, West claims that his personal filing included an explicit statement which reserved all of his rights and showed that he intended not to waive any rights, including his right to a speedy trial. Summarily overruling West's motion, the trial court noted, "The Ohio Supreme Court has ruled that a trial court does not have to permit such hybrid representation [where a person is acting as his own attorney and he also has counsel to represent him]. Either an accused acts as his own attorney or the accused has an attorney to represent him. He cannot have both at the same time." (May 13, 2005 Journal Entry). We agree with the trial court.
 {¶ 31} As the Ohio Supreme Court stated in State v.Thompson, "Neither the United States Constitution, the Ohio Constitution nor case law mandates such a hybrid representation. * * * Although appellant has the right to appear pro se or to have counsel, he has no corresponding right to act as co-counsel on his own behalf." (1987), 33 Ohio St.3d 1, 6-7. (Citation omitted). Since West had retained counsel, we cannot find that the trial court erred in overruling West's personal motion. Accordingly, West's May 11, 2005 motion did not invalidate his retained counsel's waiver of a speedy trial.
 {¶ 32} Finally, West asserts that the State's failure to provide a bill of particulars and a motion for disclosure of intent to use evidence in a timely manner denied his right to a speedy trial. We disagree.
 {¶ 33} On March 10, 2005, West's retained counsel filed two motions, one requesting a bill of particulars and one requesting the State to disclose its intent to use evidence, which the trial court granted and ordered the State to provide both within ten days. Additionally, on October 6, 2005, the trial court reordered the State to provide West with a bill of particulars and a disclosure of its intent to use evidence. Finally, on October 18, 2005, the State provided West with the bill of particulars and a disclosure of its intent to use evidence.
 {¶ 34} However, West fails to recognize that prior to the March 10, 2005 filing, he had effectively waived his right to a speedy trial on March 9, 2005. Additionally, West never explicitly withdrew the waiver of his right to a speedy trial after his trial counsel resigned in August of 2005. On October 26, 2005, the trial court found that West's October 14, 2005 motion to dismiss "should serve as the withdrawal of the defendant's waiver through his counsel of his right to a speedy trial." (October 26, 2005 Journal Entry). Accordingly, we find that the State's failure to provide the bill of particulars and to disclose its intent to use evidence did not violate his right to a speedy trial, because West had a valid waiver filed with the trial court.
 {¶ 35} As noted above, since only fifteen days of the statutory ninety days had elapsed, the trial court correctly ruled that appellant's right to a speedy trial was not abridged.
 {¶ 36} Accordingly, West's second assignment of error is overruled.
 Assignment of Error No. VII {¶ 37} In his seventh assignment of error, West argues that R.C. 4511.191 is an unconstitutional bill of attainder in violation of Section 10, Article I of the United States Constitution. Specifically, West argues that the Bill of Attainder Clause is violated, because the administrative license suspension imposed under R.C. 4511.191 inflicts punishment without a judicial trial. Additionally, West argues that administrative license suspension under R.C. 4511.191 violates the Double Jeopardy Clause of the United States Constitution. We disagree.
 {¶ 38} As defined by the United States Supreme Court, a bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v.Admr. of General Services (1977), 433 U.S. 425, 468, citingUnited States v. Brown (1965), 381 U.S. 437, 445, 447; see, also, State ex rel. Matz v. Brown (1988), 37 Ohio St.3d 279,280. Thus, a bill of attainder is a law that (1) inflicts punishment, (2) without a judicial trial, (3) upon an identifiable individual. See Nixon, 433 U.S. at 468. Because R.C. 4511.191 fails to meet, at least, the third element, it is not, therefore, a bill of attainder.
 {¶ 39} R.C. 4511.191 does not apply to an identifiable individual. In discussing this element, the United States Supreme Court stated that "arguing that an individual or defined group is attainted whenever he or it is compelled to bear burdens which the individual or group dislikes * * * removes the anchor that ties the bill of attainder guarantee to realistic conceptions of classification and punishment. [This] view would cripple the very process of legislating, for any individual or group that is made subject of adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality." Nixon, 433 U.S. at 470. (Citations omitted).
 {¶ 40} Here, the administrative license suspension under R.C.4511.191 applies to all users of highways or any public or private property used by the public for vehicular travel or parking within Ohio and anyone who is in physical control of a vehicle, streetcar, or trackless trolley, operating under the influence of intoxicants. Since the administrative license suspension under R.C. 4511.191 does not fall upon identifiable individuals, it is not a bill of attainder.
 {¶ 41} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb," and is applicable to the states through theFourteenth Amendment. Benton v. Maryland (1969), 395 U.S. 784;State v. Tolbert (1991), 60 Ohio St.3d 89, 90. Similarly, Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." Ohio courts have historically treated the protections afforded by the Double Jeopardy Clauses of the Ohio Constitution and the United States Constitution as coextensive. See State v.Konicek (1984) 16 Ohio App.3d 17, 17-18; State v. Moss (1982),69 Ohio St.2d 515, 517; State v. Royster (1982),3 Ohio App.3d 442, 443. We therefore proceed based on the premise that the Double Jeopardy Clause of each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. United States v.Halper (1989), 490 U.S. 435, 440, citing North Carolina v.Pearce (1969), 395 U.S. 711, 717.
 {¶ 42} In State v. Gustafson, the Ohio Supreme Court held:
1. The Double Jeopardy Clauses of the Fifth Amendment to theUnited States Constitution and Section 10, Article I of the OhioConstitution do not preclude criminal prosecution and trial ofmotorists for driving in violation of R.C. 4511.19 based upon,and subsequent to, the imposition of an administrative licensesuspension pursuant to R.C. 4511.191.
 2. An administrative license suspension imposed pursuant toR.C. 4511.191, and a criminal driving-under-the-influenceprosecution for violation of R.C. 4511.19, arising out of thesame arrest, constitute separate proceedings for double jeopardypurposes.
 Gustafson, 76 Ohio St.3d 425, 1996-Ohio-299, paragraphs one and two of the syllabus. Based upon the Ohio Supreme Court's decision in Gustafson, West's argument that an administrative license suspension under R.C. 4511.191 violates the Double Jeopardy Clause of the United States Constitution is without merit.
 {¶ 43} Having found that the administrative license suspension under R.C. 4511.191 is not a bill of attainder and does not violate the Double Jeopardy Clause of both the United States and Ohio Constitutions, West's seventh assignment of error is overruled.
 Assignment of Error No. VIII {¶ 44} In his eighth assignment of error, West asserts that the trial court erred in holding a jury trial with a panel of eight persons, rather than twelve persons. Based upon the Ohio Supreme Court's decision in State ex rel. City of Columbus v.Boyland (1979), 58 Ohio St.2d 490, we disagree.
 {¶ 45} Section 5, Article I of the Ohio Constitution provides, "The right to a trial by jury shall be inviolate." Crim.R. 23(B) provides, in pertinent part, "[i]n misdemeanor cases juries shall consist of eight [persons]."
 {¶ 46} In Boyland, the Ohio Supreme Court held, "Crim.R. 23(B), which provides that `[i]n misdemeanor cases juries shall consist of eight,' violates neither Section 5 nor Section 10 of Article I of the Ohio Constitution. (Work v. State,2 Ohio St. 296, overruled.)." Boyland, 58 Ohio St.2d 490, syllabus.
 {¶ 47} In making its decision, the Ohio Supreme Court noted:
This court has previously stated that, in general terms,substantive law is that which creates duties, rights, andobligations, while procedural law prescribes the methods of theenforcement of those rights.
 Crim.R. 23(B) in no way attempts to alter a defendant'ssubstantive constitutional right to a trial by jury. It merelyprescribes the method by which the substantive right is to beexercised. It is properly characterized as procedural in nature.The rule, therefore, was properly promulgated pursuant to thiscourt's rule-making authority pursuant to Section 5(B) of ArticleIV of the Ohio Constitution.
 Boyland, 58 Ohio St.2d at 492-93. (Footnotes and citations omitted).
 {¶ 48} Accordingly, West's eighth assignment of error is overruled.
 Assignments of Error Nos. III, IV, VI {¶ 49} In his third assignment of error, West asserts that the trial court erred in finding the officer's testimony more credible than his own and his witness's testimony. In his fourth assignment of error, West asserts that the trial court erred in failing to suppress the police station video that was immaterial to prove his alleged OVI violation. In his sixth assignment of error, West asserts that the trial court erred in failing to declare a mistrial based upon the State's opening statement.
 {¶ 50} Due to the nature of these assignments of error, we choose to address them together.
 {¶ 51} We begin by noting that West failed to provide a copy of the transcript of the January 2006 jury trial. It is West's duty, as appellant, to order from the reporter the necessary portions of the transcript for our review. App.R. 9(B). In absence of a transcript, an appellate court is required to assume the regularity of the lower court's proceedings. Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
 {¶ 52} Because our review of West's third and sixth assignments of error would require us to review the transcript of the jury trial, we cannot find that the trial court erred in finding that the police officer's testimony was credible and in failing to declare a mistrial because of prosecutorial misconduct during its opening statement. Accordingly, West's third and sixth assignments of error are overruled.
 {¶ 53} In his fourth assignment of error, West argues that the trial court erred in failing to suppress the police station video. However, West has also not included the police station video as part of the record. His argument on appeal is that the video evidence was immaterial to the charges against him. Without the videotape, West has no argument. It is West's responsibility to produce the record on appeal, including the parts of the record required to evaluate the assignments of error, and this Court will presume regularity of the proceedings of the lower court in the absence of a proper record on appeal. App.R. 9(B);State v. Estrada (1998), 126 Ohio App.3d 553, 556.
 {¶ 54} Accordingly, West's fourth assignment of error is overruled.
 Assignment of Error No. V {¶ 55} In his fifth assignment of error, West argues that the trial court erred in sentencing him to a one hundred eighty day term of incarceration, because he did not execute a waiver of counsel.
 {¶ 56} Crim.R. 44 provides, in pertinent part:
(B) Where a defendant charged with a petty offense is unableto obtain counsel the court may assign counsel to represent him.When a defendant charged with a petty offense is unable to obtaincounsel, no sentence of confinement may be imposed upon him,unless after being fully advised by the court, he knowingly,intelligently, and voluntarily waives assignment of counsel.
 {¶ 57} Under Crim.R. 2(D), a petty offense is defined as any misdemeanor for which the maximum penalty under state law is imprisonment for six months or less. In the instant case, West was cited for among other things a violation of R.C. 4511.19. R.C. 4511.19(G)(1)(b) provides that "an offender who, within six years of the offense, previously has been convicted of or pleaded guilty to one violation of division (A) or (B) of this section or other equivalent offense is guilty of a misdemeanor of the first degree." The maximum penalty for first degree misdemeanors is one hundred eighty days in jail. R.C. 2929.24(A)(1). Therefore, the maximum penalty for West's violation of R.C. 4511.19 is considered a "petty offense" for purposes of Crim.R. 44. See R.C.4511.19(G)(1)(b)(i)-(ii).
 {¶ 58} Because the underlying offense, in the case sub judice, was a "petty offense", Crim.R. 44(B) was applicable. Pursuant to that rule, the trial court could impose a term of imprisonment only under two circumstances: (1) appellant was actually represented by counsel during trial; or (2) appellant decided to represent himself and properly waived his right to counsel. State v. Mogul, 11th Dist. No. 2003-T-0178,2006-Ohio-1873, at ¶ 17. It is undisputed that West did not have the benefit of counsel at trial. Accordingly, the imposition of a jail term upon appellant was appropriate in this instance only if he properly waived the right to counsel.
 {¶ 59} The basic procedure for the waiver of counsel in a criminal action is delineated in Crim.R. 44(C), which simply states that such a waiver must be made in open court and must be recorded in the manner provided under Crim.R. 22. Crim.R. 22 provides that the waiver of counsel in "petty cases" should be recorded by means of shorthand, stenotype, or any other adequate mechanical device.
 {¶ 60} In construing Crim.R. 44(C), the requirements of the rule must be applied consistent with the general principle that courts must indulge every reasonable presumption against the waiver of a fundamental constitutional right. City of GarfieldHeights v. Brewer (1984), 17 Ohio App.3d 216, 217. For this reason, a waiver of the right to counsel cannot be presumed from a silent record; instead, any such waiver must affirmatively be set forth on the record. State v. Dyer (1996),117 Ohio App.3d 92, 95. Furthermore, it has been emphasized that the state ultimately has the duty to demonstrate that a valid waiver took place. Id.
 {¶ 61} As to the actual substance of the waiver, the courts of this state have held that a proper waiver can occur only when a trial court has given the defendant a sense of the inherent difficulties in attempting to represent himself throughout a criminal case. State v. Vordenberge, 148 Ohio App.3d 488, 492,2002-Ohio-1612. Consequently, a trial court is obligated to engage in a dialog with the defendant which will inform him of the nature of the charged offenses, any "included" offenses, the range of possible punishments, any possible defenses, and any other facts which are essential for a total understanding of the situation. Dayton v. Ealy, 2d Dist. No. 20462, 2006-Ohio-308, at ¶ 13.
 {¶ 62} The record demonstrates that the trial court received written communication from West's hired attorneys submitting their resignation as counsel, because West advised them that he did not need their services as counsel. (Aug. 9, 2005 Journal Entry). Included in the trial court's entry, the trial court provided, "The case is ordered set for a final pretrial hearing [on August 18, 2005 at 1:45 p.m.] so that the court can discuss with the defendant his apparent choice to represent himself at trial and for the defendant to sign a waiver of his right to counsel." (Aug. 9, 2005 Journal Entry). However, the record demonstrates that the trial court never obtained a waiver of counsel from West. In so concluding, this Court is mindful that the record does not include a transcript of the August 18, 2005 pretrial hearing, during which the trial court was to discuss with West his choice to represent himself at trial. Additionally, the record does not include a written waiver of West's right to counsel.
 {¶ 63} An appellant typically bears the burden of submitting to the court of review a record of the facts and findings that provide the basis for his appeal. Wray v. Parsson (1995),101 Ohio App.3d 514, 518; App.R. 9. Such a record necessarily includes a complete transcript of the relevant proceedings below. In the absence of such transcripts, this Court will normally assume the correctness of the proceedings in the lower court.Knapp, 61 Ohio St.2d at 199. Nevertheless, this appeal implicates the waiver of a fundamental constitutional right and this Court is loath to presume a knowing and intelligent waiver from a silent record. Brewer, 17 Ohio App.3d at 217, citingCarnley v. Cochran (1962), 369 U.S. 506, 516.
 {¶ 64} Accordingly, since the rules of procedure require a criminal defendant's waiver of counsel to be recorded and the law presumes that the waiver did not occur, it is incumbent upon the state to affirmatively demonstrate that the trial court complied with the rules surrounding the waiver of counsel. Dyer,117 Ohio App.3d at 96.
 {¶ 65} Therefore, because there is no waiver evident in the record, we must conclude that West did not knowingly and intelligently waive his right to counsel. Based on the foregoing, West's assignment of error is sustained. The trial court did not obtain a knowing and intelligent waiver of West's right to counsel, and because counsel was not afforded to him Crim.R. 44(B) prohibits a sentence of confinement.
 {¶ 66} Accordingly, West's fifth assignment of error is sustained and in accordance with Crim.R. 44(B), we modify the sentence by vacating the portion imposing a one hundred eighty day jail sentence.
 {¶ 67} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, in his fifth assignment of error, but having found no error prejudicial to the appellant herein, in the particulars assigned and argued in his first, second, third, fourth, sixth, seventh, and eighth assignments of error, we modify appellant's sentence by vacating the portion imposing a one hundred eighty day jail sentence, and as so modified, we affirm the judgment of conviction.
Judgment Vacated in Part And Affirmed in Part.
 Bryant, P.J., and Cupp, J., concurring separately.
[1] We note that the record does not contain a transcript of the jury trial.